**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DHANNIELL AQUINO, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 09-234J |
| | ) | |
| v. | ) | Judge Gibson |
| | ) | Magistrate Judge Bissoon |
| DR. NAJI., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons stated below, it is respectfully recommended that Defendants' motion for

summary judgment (Doc. 56) be granted, and Plaintiff's motion to oppose Defendant's [sic]

motion for summary judgment (Doc. 60) be denied.

### II. REPORT

Plaintiff Dhanniell Aquino[1] ("Plaintiff") is a former state prisoner who has filed a civil

rights action pursuant to the provisions of 42 U.S.C. § 1983, alleging violations of the Eighth

Amendment to the Constitution of the United States by Defendants.  This suit commenced with

the receipt of Plaintiff's initial complaint on September 3, 2009.  (Doc. 1).  Plaintiff filed an

amended complaint on February 12, 2010.  Am. Compl. (Doc. 30).  Defendants filed an answer

thereto on October 22, 2010.  (Doc. 53).  On January 19, 2011, Defendants filed a motion for

---

[1] Plaintiff is called, at various points in the record, by the names "Dhanniell Vega," "Daniel Vega," and "Danny Vega."  Plaintiff asserts that these appellations refer to him.  See (Doc. 57-8) at 29-30.

summary judgment. (Doc. 56). Plaintiff responded with a motion to oppose Defendants' motion for summary judgment and supporting brief. (Docs. 60-61). These cross-motions are ripe for disposition.

A. Facts

Plaintiff alleges that he was assaulted by another inmate on May 20, 2002, while he was incarcerated at the State Correctional Institution at Cresson (SCI-Cresson). (Doc. 30) at 1. This assault allegedly resulted in multiple broken bones in Plaintiff's face, which required at least two reconstructive surgeries at an outside hospital in Altoona, Pennsylvania. Id. Plaintiff allegedly was informed by his surgeon that "further surgery [would] be necessary eventually" to address remaining broken bones. Id. Defendant Naji allegedly was employed as a physician at SCI-Cresson at that time, and participated in Plaintiff's treatment there. Id. at 2. Plaintiff testified at his deposition in 2010 that Defendant Naji told him in 2002 that he "will have further surgery eventually." (Doc. 57-5) at 31.

On July 17, 2008, Plaintiff fell down some stairs while incarcerated at the State Correctional Institution at Houtzdale ("SCI-Houtzdale"). The record indicates that Plaintiff complained of back and chest pains after the fall, and had an abnormal EKG. (Doc. 58) ¶ 15; (Doc. 57-3) at 6-8. Defendant Naji, who had become the medical director of SCI-Houtzdale, ordered that Plaintiff be sent to the emergency room at Altoona Hospital. (Doc. 58) ¶ 16. A CT scan was performed there, which took axial images of Plaintiff's head in 3 millimeter slices, ranging from the base of his skull to its vertex. Id. at 29. While it appears that the purpose of the scan was to determine whether Plaintiff suffered from a subdural hematoma, see id. at 6, 29, the physician interpreting the scan did not mention the existence of any fractures. Id. at 29. With

respect to Plaintiff's nose, the interpreting physician noted that "[t]here [was] deviation of the nasal septum to the right[,]" and opined that Plaintiff's paranasal sinuses were "unremarkable." Id.

On December 4, 2008, Plaintiff presented to Defendant McCliment, a licensed physician's assistant practicing at SCI-Houtzdale. (Doc. 30) at 3; (Doc. 58) ¶ 29. Plaintiff complained of pain in his nose, as well as a blockage that made it difficult to breathe. (Doc. 58). Plaintiff testified at his deposition that, at some point, this Defendant examined his nose and stated that it appeared to be broken. (Doc 57-4) at 63. Defendant McCliment ordered x-rays to be taken of Plaintiff's nose, which were completed the same day. (Doc. 57-3) at 16. On December 15, 2008, Defendant McCliment informed Plaintiff that his x-rays were normal, but did not permit Plaintiff to view the x-rays himself. (Doc. 57-3) at 19. A copy of the report interpreting Plaintiff's x-rays from December 4, 2008, which was completed by a radiologist who is not a party to this suit, was submitted as evidence in support of Defendants' motion for summary judgment. See (Doc. 57-3) at 16. Defendant McCliment responded to Plaintiff's request for information on his x-rays on December 16, 2008, (Doc. 61-6) at 3. However, the record does not indicate the Defendant McCliment saw or provided treatment to Plaintiff again after the consultation on December 15, 2008.

Plaintiff also asserts that he informed Defendant Naji of the pain in his nose and his desire for surgery. Plaintiff's medical records indicate that the first time he spoke with Dr. Naji about this issue was December 15, 2008, sometime after seeing Defendant McCliment regarding his x-ray results. (Doc. 57-3) at 17-19. Plaintiff complained of pain in his nose, and requested that Defendant Naji approve surgery to treat it. Id. at 17-18; (Doc. 30) ¶¶ 5-6. Defendant Naji responded that, upon review of Plaintiff's medical records, surgery was not indicated. (Doc. 30)

¶ 6; (Doc. 58) ¶ 35. Defendant Naji's notes in Plaintiff's medical records cite to the report from his recent x-ray, noting that it showed no fracture of the nasal bone or sign of acute injury. (Doc. 57-3) at 18. Plaintiff's medical records also indicate that Defendant Naji examined Plaintiff on that date, and found that he did not appear to be in pain, or exhibit any "pain expression on his face." Based on this, Defendant Naji regarded Plaintiff's demands for surgery as "looking for a gain" and characterized Plaintiff as "manipulative." Id.

Plaintiff's medical records also indicate that he was prescribed multiple pain medications during this period of time. Defendant Naji prescribed Motrin on July 24, 2008, in response to Plaintiff's complaint of "headaches."[2] (Doc. 58) ¶ 17; (Doc. 57-3) at 9, 28. Plaintiff's prescription for Elavil[3] was renewed on August 14, 2008. (Doc. 58) ¶ 18; (Doc. 57-3) at 27. On September 23, 2008, Plaintiff was prescribed Voltaren[4] by Defendant Naji in response to Plaintiff's complaints of lower back pain. (Doc. 58) ¶ 22; (Doc 57-3) at 12, 25. Plaintiff was prescribed Elavil again on October 7, 2008, (Doc. 58) ¶ 24; (Doc. 57-3) at 26, and Voltaren on November 10, 2008. (Doc. 58) ¶ 27; (Doc. 57-3) at 13, 24. His prescription for Voltaren was continued due to Plaintiff's complaints of back and leg pain on December 24, 2008. (Doc. 58)

---

[2] Plaintiff testified at his deposition that the "headaches" mentioned in his medical records refer, in fact, to the pain that he was experiencing in his nose. (Doc. 57-5) at 15-16.

[3] Elavil (which is a brand name for the drug amitriptyline hydrochloride) is a tricyclic antidepressant. It is also used to treat migraine headaches, post-herpetic neuralgia (pain that remains after a shingles infection), and eating disorders. See Amitriptyline –PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000666/#a682388 (last viewed Aug. 29, 2011).

[4] Voltaren (which is a brand name for the drug diclofenac) is a nonsteroidal anti-inflammatory drug, or "NSAID". It is used to treat pain and inflammation. Diclofenac – PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000882/ (last viewed Aug. 29, 2011).

4

¶ 37; (Doc. 57-3) at 19.  Plaintiff left SCI-Houtzdale and entered a half-way house in March of 2009.  (Doc. 58) ¶ 44.

In support of his claims, Plaintiff argues that, after he was released from SCI-Houtzdale, he sought treatment for his nose from a physician who opined that surgery was medically necessary to correct his problem.  Plaintiff adduces a letter from his surgeon to his insurance company, dated May 13, 2009, describing Plaintiff's injury as resulting from "a significant nasal fracture with marked deformity which still exists causing pain in the right side due to deviation of the nose to the left of the midline and deformity of the nasal septum."[5]  (Doc. 61-2) at 1.  This caused a "nearly complete airway obstruction on the left side."  Id.  Plaintiff also submits a copy of a letter from his insurance company approving the surgery.  (Doc. 61-3) at 1.

Plaintiff adduces medical records indicating that he underwent rhinoplasty and septoplasty on August 4, 2009, which resulted in the excision of cartilage from his septum.  (Doc. 61-4) at 4-7.  Plaintiff testified at his deposition that he no longer suffers pain in his nose.  (Doc. 57-4) at 20.  Plaintiff further adduced excerpts from his journal, spanning from July 22, 2008, to May 1, 2009.  See generally (Doc. 61-5).  Finally, Plaintiff submits a sick-call slip from December 2, 2008, and request slips from December 15 and 16, 2008, regarding problems breathing through his nose, and the results of his x-ray.  (Doc. 61-6) at 1-4.


B.  Eighth Amendment Analysis

Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care.  Estelle v. Gamble, 429 U.S. 97, 104 (1978).  In order to succeed on a claim of denial of medical treatment in violation of his Eighth Amendment rights, an inmate must show:

---

[5] This impression is confirmed by the surgeon's operative report.  (Doc. 61-4) at 7-8.

(1) that he was suffering from a "serious" medical need; and (2) that the prison officials were "deliberately indifferent" to the serious medical need. Id. With respect to the first element of this standard, a medical need qualifies as "serious" when, for example, "it . . . has been diagnosed by a physician as requiring treatment." Monmouth Cnty Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A medical need also may be "serious" if it is so obvious that even a layperson would recognize the need for a doctor's attention. Morrison v. Phillips, No. 06-812, 2008 WL 4308215, at *13 (D.N.J. Sept. 16, 2008) (quoting Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006)).

With respect to the second element – deliberate indifference – the Supreme Court has adopted a subjective approach. Farmer v. Brennan 511 U.S. 825, 842 (1994). Farmer teaches that a showing of knowledge of "a substantial risk of serious harm" requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; see also Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer, 511 U.S. at 837). The United States Court of Appeals for the Third Circuit has held that this standard may be met in several scenarios, including "when a doctor is intentionally inflicting pain on [a] prisoner," and when the denial of "reasonable requests for medical treatment . . . exposes the inmate to undue suffering[.]" Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (internal quotation marks and citations omitted). This standard is also met when "a prison official . . . knows of a prisoner's need for medical treatment but intentionally refuses to provide it" or "delays necessary medical treatment based on a nonmedical reason." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). However, acts that would rise only to the level of medical malpractice, or mere disagreement

over a course of treatment, are not violations of the Eighth Amendment. <u>Spruill</u>, 372 F.3d at 235.

Assuming, *arguendo*, that Plaintiff has demonstrated that his medical condition was "severe" for the purposes of the Eighth Amendment, his claims fail because he has adduced no evidence of deliberate indifference on the part of Defendants. Plaintiff's medical records show that he received, generally, multiple treatments for a variety of ills. It also shows that (1) his nose was examined visually by Defendants; (2) his x-ray of December 4, 2008, was interpreted by an outside radiologist to be "normal[;]" (3) a CT scan taken on July 18, 2008, did not show signs of a fracture, but did indicate the existence of a deviated septum; (4) Defendant Naji subjectively did not believe that Plaintiff showed indicia of pain on December 15, 2008; and (5) Plaintiff was provided with pain medication by medical staff when he complained of pain.

Despite the existence of evidence showing that Plaintiff benefitted from surgery after his release, the record does not support the conclusion that Plaintiff was denied treatment for his ills by Defendants. To the contrary, the record indicates that Plaintiff's complaints of pain and difficulty breathing were investigated, and treatment was provided. As Defendants properly note, Plaintiff's disagreement with Defendants' assessment of Plaintiff's medical condition, and the evidence adduced in support thereof, is more indicative of a claim of medical malpractice than a violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment. Accordingly, summary judgment should be granted to Defendants. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) (summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case and for which that party will bear the burden of proof at trial).

### III. **CONCLUSION**

For the reasons stated above, stated below, it is respectfully recommended that Defendants' motion for summary judgment (Doc. 56) be granted, and Plaintiff's motion to oppose Defendant's [sic] motion for summary judgment (Doc. 60) be denied.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1) (B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this report and recommendation must be filed by September 14, 2011. Failure to file objections will waive the right to appeal. See Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


Dated: August 31, 2011                         s/Cathy Bissoon
                                               CATHY BISSOON
                                               UNITED STATES MAGISTRATE JUDGE


cc:
**DHANNIELL AQUINO**
1301 North 6th Street
Lick Tower, Suite 704
Harrisburg, PA 17102